UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENZEL L. SCHOENFELDT and LISA D. SCHOENFELDT, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE H. SCHOENFELDT,<br><br>Defendant. | CASE NO. C13-5468 RJB<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant George H. Schoenfeldt's Motion for Summary Judgment. Dkt. 22. The Court has considered the pleadings in support of and in opposition to the motion and the record herein.

**INTRODUCTION AND BACKGROUND**

Plaintiffs Denzel and Lisa Schoenfeldt (Plaintiff) filed this action on June 13, 2013, under general maritime law for personal injuries suffered by Denzel Schoenfeldt while a passenger on a recreational vessel owned and operated by Defendant George Schoenfeldt. Dkt. 1 pp. 1-3. Defendant's motion for summary judgment asserts that Plaintiffs have failed to present a general

issue of material fact that Denzel's injuries were caused by an "unreasonable hazard" or that Defendant breached any "duty of care" owed Denzel.

Defendant is the owner of a 24 foot boat that he uses for crabbing. Dkt. 24-9 p. 3. On July 15, 2010, Defendant asked his son Denzel to assist him in pulling his crab pots because his usual help was unavailable. Dkt. 23 p. 2; Dkt. 24-2 p. 16. Defendant had a 5hp Honda motor converted into a crab pot puller and by mounting a capstan[1] to the motor and securing it to a davit on his vessel. Dkt. 24-2 p. 22. On the date of Plaintiff's injury the motor was not functioning properly and could only be operated at high speed; i.e. full throttle. Dkt. 24-2 p.10, Dkt. 24-8 p. 1; Dkt. 24-3 p. 9. The capstan attached to the motor remained spinning at full speed as long as the motor was operating. Defendant could only control the speed of retrieval of his crab lines by the amount of tension he manually placed on the lines that wrapped around the capstan. Dkt. 24-2 pp. 8-10. Defendant testifies that in this manner he could control the speed of the retrieval and that they were not coming up any faster than they would otherwise. Dkt. 24-2 p. 10.

Defendant did not warn Plaintiff of the condition of the crab pot puller and Plaintiff was unaware of its condition until Defendant started the motor to retrieve the first crab pot of the day. Dkt. 24-3 pp. 9-10. Plaintiff noticed that it was running full throttle. *Id*. p. 28. It appeared dangerous to Plaintiff and he didn't want to get near it. *Id*. pp. 12-13. Plaintiff testifies that the pots were just flying up, and Defendant was having problem with them getting caught at the end. *Id*. p. 30. Due to the speed of retrieval the floor of the vessel was covered with kelp and other matter that flew off the line. *Id*. at pp. 18-19, 25. Plaintiff also states that due to the speed of

---

[1] At times the parties use the term "pulley" when referring to the "capstan." The proper term "capstan" is used by the Court where appropriate.

1 retrieval Defendant could not keep up with the crab pot line coming on board the boat and the

2 line was everywhere on the floor of the boat as opposed to coiled in a pile.  Dkt. 24-2 p. 2; Dkt.

3 24-3 p.18-20.

4       According to Plaintiff the accident occurred when he got up off a cooler that he had been

5 sitting on in order to assist Defendant with the crabs as they were brought on board.  Dkt. 24-3 p.

6 16.  Plaintiff states that he stood up and slipped on either loose kelp or the crab line that was

7 scattered on the floor of the deck of the boat.  *Id.* at 16-18.  Plaintiff started losing his balance

8 and reached out to catch himself.  *Id.*  At this point his sleeve got caught on a clip on the

9 incoming crab line and his hand was pulled through the pulley on the crab puller davit severing

10 his fingers.  *Id.*  The Defendant testifies somewhat differently.  Defendant states that as he was

11 pulling up a crab pot a derelict line from someone else's old crab pot got wrapped around his line.

12 Dkt. 24-2 pp. 16-19.  In the course attempting to remove the derelict line, Defendant saw

13 Plaintiff's sleeve get caught in the pulley, amputating his fingers.  *Id.*  Defendant thought that

14 Plaintiff was reaching to assist him with the line, but he doesn't know as it just happened so

15 quickly.  *Id.*

16       Defendant supports his motion with the report of an expert witness, Gerard Schaefer.

17 Dkt. 22-2 pp. 25-30.  Mr. Schaefer is a registered mechanical engineer.  Dkt. 22-2 p. 31.

18 Although Mr. Schaefer has extensive marine vessel experience, he is not experienced in

19 recreational crabbing or the retrieval of crab pots.  *Id.*  Initially, it is noted that Mr. Schaefer's

20 report incorrectly states that the crab pot motor had 3.5 horsepower.  Dkt. 22-2 p. 27.  In

21 actuality it was a 5 horsepower motor.  Dkt. 24-2 p. 22.  Defendant contends this discrepancy is

22 of no significance because Mr. Schaefer states:

23       Though the engine could be only operated a full speed, full speed operation is within the
      normal operating regime of the crab pot puller.  The speed of the crab pot puller would

24

      not normally be changed during pulling operations.  Reduction in pulling speed would reduce that chance that anyone or anything could be pulled into the capstan; however the purpose of the capstan is to quickly and easily haul lines so maximum achievable hauling speed is reasonable.

Dkt. 24-2 p. 29.  Defendant contends that the amount of horsepower and corresponding rotating speed of the capstan is irrelevant.  Dkt. 28 p. 2.  This contention is disputed as the Defendant himself acknowledges that the motor was not operating properly, he could not throttle-down the speed, and that his sole means of controlling the speed of retrieval of his crab pots was by manually putting tension of the lines to control the retrieval speeds.  There is no evidence that running the crab pot puller at full speed is the standard procedure for raising crab pots.  Mr. Schaefer also opines that Plaintiff did not slip and fall, but that he moved from his seated position, moving his hands past available handholds and into a location where his hand could be caught and drawn into the pulley.  Dkt. 22-2 p. 30.  However, the question as to whether Plaintiff slipped and reached out to steady himself is a disputed question of fact.

## SUMMARY JUDGMENT STANDARD

      Fed. R. Civ. P. 56(a) permits parties to move for summary judgment on all or part of their claims.  Summary Judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those that may affect the outcome of the suit under governing law. *Id*. at 248.  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if he "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995).

**MARITIME NEGLIGENCE**

As a preliminary matter, maritime law applies to this negligence law suit because the tort Plaintiff alleges occurred on a vessel traveling in navigable waters. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959); *Galentine v. Holland America Line-Westours, Inc.*, 333 F.Supp.2d 991, 995 (W.D. Wash. 2004).

To establish a claim for negligence at maritime law, a plaintiff must establish the following elements: (1) the defendant was under a duty to the plaintiff to use due care; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the plaintiff's damages. *Samuels v. Holland American Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011).

The owner of a vessel owes a duty of reasonable care to all passengers. *Id.* It is a settled principle of maritime law that a ship-owner owes the duty of exercising reasonable care toward those lawfully aboard the vessel who are not members of the crew." *Kermarec*, at 630. What constitutes reasonable care depends on the circumstances of each individual case. *Id.* at 632. Where the condition leading to the plaintiff's claim is one that is commonly encountered and not unique to the maritime context, a carrier must have actual or constructive notice of the risk-creating condition before it can be held liable. *Samuels*, at 953. By contrast, a heightened degree of care is required where the risk-creating condition is peculiar to the maritime context. See *Catalina Cruises v. Luna*, 137 F.3d 1422, 1425-26 (9th Cir.1998) (concluding that "where the risk is great because of high seas, an increased amount of care and precaution is reasonable"); *Kirk v. Holland American Line*, 616 F.Supp.2d 1101, 1105 (W.D. Wash. 2007) (declining to conclude that risks associated with disembarkation are not unique to cruises). The degree of care that is reasonable increases in tandem with an increased risk that is unique to maritime travel. *Galentine*, 333 F.Supp2d at 996; *Catalina Cruises*, at 1426.

The duty of care includes the duty to warn of dangers of harm that are reasonably foreseeable. *Kermarec*, at 632; *Wyler v. Holland America Line-USA, Inc.*, 348 F.Supp.2d 1206, 1210 (W.D. Wash. 2003).

Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact. *Christensen v. Georgia–Pacific Corp.*, 279 F.3d 807, 813 (9th Cir. 2002). Questions of forseeability and causation in negligence cases particularly lend themselves to resolution by a jury. *Wyler*, 348 F.Supp.2d at 1210. Such is the case here.

Plaintiff has presented a genuine issue of material fact as to whether the crab pot puller and deck conditions, or the lack of warning, presented an unreasonably dangerous condition. There are genuine issues of fact as to whether Defendant breached a duty of care to Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendant is not entitled to summary judgment. Therefore, it is hereby **ORDERED**:

Defendant's Motion for Summary Judgment (Dkt. 22) is **DENIED.**

Dated this 13th day of May, 2014.

*[signature]*

ROBERT J. BRYAN
United States District Judge